PATRICK ET AL. v. WESTON.

1. MINING PARTNERSHIPS.

With a few exceptions, the law of mining partnerships is the same as that governing ordinary trading partnerships. One of these exceptions is that a member of a mining partnership may convey his interest in the mine and business without dissolving the partnership. Another difference is that the partnership is not founded upon the *delectus personæ*. Hence one mining partner has not the right to bind his associate to the same extent as a member of a trading partnership.

2. SAME.

As between mining partners themselves, an incoming member does not, in the absence of an agreement, become liable for debts contracted prior to the time he acquired an interest in the property and became a member.

3. SAME.

An incoming member of a mining partnership which had employed a mine and financial manager at a stipulated salary, who reaps the benefit of the manager's services, is liable for a proportionate share of the salary.

*Error to the District Court of Lake County.*

THIS is an action for an accounting, brought by A. S. Weston, one of the owners of the Col. Sellers and Accident lode mining claims, against the other owners therein.

The undisputed facts are that in the year 1883, W. F. Patrick and John Livezey, Jr., with a number of others, were the owners, as tenants in common, of the Col. Sellers and Accident lode mining claims, situate in Lake county, Colorado. In that year the owners entered into a mining partnership, under the firm name and style of " The Col. Sellers Mine," for the purpose of mining said claims and extracting the valuable minerals therefrom. These mining claims were connected by underground workings and were worked together, it being agreed among the members of the mining partnership, that all dividends should be declared on the basis of the ownership in the Col. Sellers lode, and that the

profits and losses should be shared according to such owner-
ship.

This copartnership continued until November 29, 1886,
at which last mentioned date the defendant in error Weston
succeeded to the interest of John Livezey, Jr., as an owner
in the mines, and as a member of the mining partnership.
Mr. Weston, at the time of entering into the copartnership,
had full knowledge of the agreement under which the mines
were being worked, and he made no objection thereto, but
permitted the work to be continued as therebefore.

It appears that during the time that Livezey was an owner
of said mining claims, and while he was a member of the
mining partnership, the company trespassed beyond the side
lines of the claims into the adjoining territory, and extracted
ore from claims known as the " A. Y." and " Minnie," to the
amount of about $30,000.

The owners of these claims commenced suit to recover the
value of the ore thus extracted.   This suit was commenced
and prosecuted to judgment in the district court before
Weston became interested in the mining property or in the
mining partnership.   The suit was prosecuted from court
to court until it reached the supreme court of the United
States, in which court a judgment was affirmed against the
Col. Sellers mine for the sum of $30,000.   This judgment
was afterwards paid from the profits derived from working
the mine under the mining partnership of which defendant
in error Weston was a member, and dividends were withheld
to the amount of such judgment.   This was against the ob-
jection and protest of defendant in error, and constitutes one
of the principal causes of complaint at this time.

It also appears that at a meeting of the copartners on
December 17, 1887, one W. F. Patrick was made financial
agent of the partnership, and Charles L. Hill general man-
ager; that shortly after this time Hill resigned and W. F.
Patrick acted for a time, by appointment, both as financial
agent and general manager, receiving in these two capacities
the sum of $500 per month.   Defendant in error protested

against the appointment of Mr. Patrick as manager, and now claims that he is not responsible for any part of his salary as such manager.

It further appears that about $8,000 of the company's funds were paid out in attorneys' fees during the time that Weston was a member of the partnership, but that these sums were for services in connection with the Minnie suit and other matters that arose before Weston became interested in the properties. Among these matters was a suit instituted by The Colorado Smelting Company against W. F. Patrick et al., and another suit instituted by one McLean.

The former arose out of a contract between the Col. Sellers mine and The Colorado Smelting Company, by the terms of which the Col. Sellers mine was to deliver twelve thousand tons of ore in a certain year to The Colorado Smelting Company. Only a part of this ore was delivered, and the suit was for damages for the nondelivery of the balance. The transaction occurred prior to the time at which the plaintiff Weston became interested in the property.

The McLean suit grew out of a contract or option given McLean for the sale of the property. McLean failed to make the sale, and alleged that such failure was due to the misrepresentations by the owners concerning the value of the property, and instituted suit for damages. This also occurred before Weston became interested in the property.

A trial to the court resulted in findings and judgment as follows:

1st. "That the plaintiff is not entitled to dividend No. 31.

2d. "That the plaintiff is liable for his proportionate share of the pay of the manager, W. F. Patrick, as manager of the mines.

3d. "That the plaintiff is not liable for any of the Minnie judgment, or any of the money paid thereon.

4th. "That the plaintiff is not liable for any portion of the judgment rendered in the suit of The Colorado Smelting Company against W. F. Patrick *et al.*

5th. "That the plaintiff is not liable for any portion of the expense paid in the McLean suit.

6th. " That the plaintiff is not liable for any portion of the amount paid as attorney fees by the management.

7th. " That the plaintiff is entitled to recover from the defendants five sixty-fourths of the amounts withheld and paid out for these several purposes, together with interest thereon, at the rate of eight per cent per annum from the date that dividends should have been declared therefor.

8th. " That the amount so withheld from the plaintiff by the defendants is four thousand and fifty-four and $\frac{9}{100}$ dollars, and that the interest thereon amounts to the further sum of six hundred and fifty and $\frac{95}{100}$ dollars. Therefore, it is ordered, adjudged and decreed by the court that the plaintiff have and recover of and from the defendants the sum of five thousand three hundred and five and $\frac{65}{100}$ dollars, together with his costs in this behalf expended, to be taxed, and that he have execution therefor."

To reverse this judgment this writ of error is sued out.

Mr. C. C. PARSONS and Mr. F. L. BALDWIN, for plaintiffs in error.

Mr. A. S. WESTON and Mr. JOHN A. EWING, for defendant in error.

CHIEF JUSTICE HAYT delivered the opinion of the court.

With a few well understood exceptions, the law of mining partnerships is quite similar to the law governing ordinary trading partnerships. Among these exceptions is one which allows one member of a mining partnership to convey his interest in the mine and business to a stranger without dissolving the copartnership. This exception has grown out of the necessities of the case, which require the continuous working of mines in order that the same may be made profitable. So, likewise, it has been held that neither assignment, nor death, nor bankruptcy of the owner of an interest in a mining concern should operate to dissolve a copartnership existing

for the purpose of working the mine. Another difference between a mining partnership and an ordinary trading partnership is that the former is not founded upon the *delectus personæ*, while the latter is; hence one mining partner has not the right to bind his associates to the same extent as a member of a trading partnership. *Charles v. Eschleman*, 5 Colo. 114; *Manville v. Parks*, 7 Colo. 128; *Higgins v. Armstrong*, 9 Colo. 47; *Meagher v. Reed*, 14 Colo. 335.

In the case at bar the real estate was held by the individual members of the copartnership as tenants in common, while the business of extracting the ores, etc., was conducted by the mining partnership; the undisputed evidence being that the parties were tenants in common in the ownership of the mines.

Although the facts are undisputed, plaintiff in error quotes extensively from the case of *Duryea v. Burt et al.*, 28 Cal. 569, and relied upon this and other California cases for the purpose of showing that the mining property belonged to the partnership; the contention being that mining ground belonging to and worked by a mining partnership, if acquired for mining purposes, and purchased with partnership funds, or brought into the concern by individual members as a portion of the capital stock, is, in equity, for the purpose of the partnership debts, to be treated as partnership property. But in this case the mining claims were not purchased by partnership funds, were not brought into the concern by the individual members as a portion of its capital stock, and hence did not belong to the mining partnership. Aside from the foregoing, this is not a suit instituted by outsiders to collect a partnership debt.

The existence of a mining partnership for the purpose of working the mines, although the ownership of the real estate may be in the individual members of the copartnership, as tenants in common, is clearly recognized in the case of *Duryea v. Burt, supra*, as will be seen from the concurring opinion of Mr. Justice Sawyer:

" It may be that the claims before owned and purchased in severalty in undivided interests were held by them through-

out their connection as tenants in common.  Whether they were or were not is not distinctly found as a fact, and we should not be justified in determining the question from the facts found.  Those interests were, doubtless, originally purchased as tenancies in common ; but whether from the evidence before the court, and the manner in which the parties blended their interests in those claims with their subsequent purchases and in working the whole, the court would be justified in finding that they put in the claims originally held, with the new purchases as partnership property, it is not our province now to determine.  This will be a fact to be determined on the new trial.  If so, it became partnership property, and subject to all the incidents of such property.  If not, and it was originally held and still continues to be held as a tenancy in common, then it was not partnership property, and the plaintiff has no claim to have the sum due him from his cotenant or copartner in other matters charged upon it."

The contention of plaintiffs in error is that when defendant in error Weston became an owner of and interested in the real estate, and a member of the mining partnership, he became such owner *cum onere*, subject to the settlement of the partnership accounts, and subject to the payment of the partnership debts, of which the Minnie judgment, the expenses of the suit of The Colorado Smelting Company against Patrick et al., and the costs of the McLean suit, with attorneys' fees and expenses, were a part.

This contention of counsel is not supported by any adjudicated case, and, upon principle, we think that an incoming partner ought not to be liable for debts contracted prior to his acquiring an interest in the property, and prior to his becoming a member of the mining partnership.  Cases in which the incoming partner has been held liable may all be resolved to instances in which the real estate was either purchased by the partnership, with partnership funds, or was brought into the firm as a part of the capital stock by the individual members of the copartnership.  In the case at bar, as we have seen, there is no evidence of a partnership in the ownership of the

mines; the evidence being to the effect that an ordinary mining partnership was formed for the purpose of prospecting and working the properties.

We are not concerned in this case nor do we decide what the rights of partnership creditors may be in equity to enforce their claims against the property of the firm or individual members thereof. We are only concerned with the law governing partners *inter sese*, and certainly, in the absence of an agreement to the contrary, the general rule is that an incoming partner does not become liable for debts contracted prior to the time he became a member of the partnership. This principle is elementary, and there is nothing in this case to bring the plaintiff Weston within any exception to the rule, and we therefore hold that he was not liable for any part of the Minnie judgment, or any part of the claim of The Colorado Smelting Company, or of McLean, or of the expenses of any of these suits.

It is contended, however, that the court below erred in rendering a joint judgment against the defendants. It sufficiently appears from the evidence in this case that the defendants acted in concert in reference to these matters, and by their joint action caused the funds of the company to be used in the payment of obligations for which they were jointly and severally liable, and for which Weston was not liable. Under these circumstances, by a familiar principle, they became jointly and severally liable to him for the amounts thus diverted.

There are a number of cross errors assigned. The first of these challenges the correctness of the judgment of the court below, denying the right of plaintiff to share in dividend No. 31. The evidence in regard to the condition of the company at the time this dividend was declared is quite uncertain. It appears, however, from this evidence that at the time this dividend was declared the company had no available funds with which to pay the same, but that, on the contrary, it had overdrawn its bank account to a large amount, and that this sum was needed to pay this overdraft, and pay the

current expenses of the mine for the preceding month. Under these circumstances, we think the trial court was justified in holding that plaintiff was not entitled to participate in this dividend.

The second assignment of cross error challenges the correctness of the finding of the district court, whereby the plaintiff was held liable for his proportionate share of the pay of W. F. Patrick, as manager of the mine, and including his salary as financial manager. It is established by the evidence, beyond controversy, that Patrick discharged the duties of the two positions designated; that plaintiff had the advantage of his services and reaped, in the nature of dividends, the benefits of Mr. Patrick's management. Under these circumstances, the trial court was justified in holding plaintiff liable for his proportionate share of Mr. Patrick's salary, as manager of the mine, and also as financial manager.

Moreover, the right of the majority to conduct the business of the copartnership must be upheld.

The third assignment of cross error challenges the amount found due the plaintiff, and the amount of the judgment. By a clerical error the amount of the judgment is six hundred dollars ($600) less than it should have been, as will appear from the following statement:

| | |
|---|---:|
| Paid on Minnie judgment, | $29,247.00 |
| Costs in same, | 490.48 |
| Costs and attorneys' fees in McLean suit, | 5,566.90 |
| Reserve fund Colorado Smelting Company suit, | 15,000.00 |
| Interest paid to bank on same, | 1,133.35 |
| Costs in same suit, | 743.95 |
| General attorney's fees, | 7,399.74 |
| | $59,581.42 |
| Five sixty-fourths of which is | 4,654.80 |
| Interest, as found, | 650.95 |
| | $5,305.75 |

This error as to the amount does not entitle plaintiffs in error to a new trial, as there can be no dispute upon the evi-

dence as to the correct amount, and defendant in error makes no claim to additional interest by reason of the increase. The larger amount would increase the allowance for interest, and, this being waived, is to the benefit and not to the injury of plaintiffs in error.

The finding and judgment of the court below will be corrected in accordance with the foregoing statement, and as thus corrected it will stand affirmed.

*Affirmed.*