## ELM OIL CO. et al. v. CLARK LUMBER CO.

No. 24553.  Feb. 16, 1937.

E. M. Gallaher and C. W. Talbot, for plaintiffs in error.

Edwin A. Ellinghausen, for defendant in error.

BUSBY, J. This is an action to recover a money judgment and foreclose a materialman's lien for materials furnished and used in the construction of an oil derrick or drilling rig on an oil and gas lease. It originated in the district court of Creek county, where the materialman lien claimant, as plaintiff, was successful in obtaining a money judgment for the sum of $211.41, with interest at the rate of 6 per cent. per annum from February 18, 1931. The judgment was determined to be the personal liability of the Woodland Oil Company, the Elm Oil Company, and J. P. Flanagan and to constitute a lien upon certain of their property consisting of an oil and gas lease and the equipment situated thereon.

The defendants Elm Oil Company and J. P. Flanagan join as plaintiffs in error in presenting the case to this court on appeal. They complain both of the personal judgment entered against them and of the decree adjudging their property to be subject to the payment of the debt. Our conclusion is that the personal judgment should be set aside, but that the lien should be validated.

The facts are that the Woodland Oil Company acquired an oil and gas lease on November 19, 1930, on certain described property situated in Creek county, Okla. A contract was made on January 12, 1931, with the Clark Lumber Company, plaintiff in this action, pursuant to which that company furnished and delivered $492.61 worth of material which was used in the construction of the derrick and other incidental equipment. The delivery of this material occurred during a period of time commencing on the 12th of January and ending on the 18th day of February. All but about $25 worth of the material was delivered in January. At the time the contract for the delivery of the material was made and at the time the major portion of the material was delivered and used, the defendants Elm Oil Company and J. P. Flanagan did not have any interest in or connection with the leasehold estate or the preparatory drilling operations thereon.

They acquired their interests by assignment from the Woodland Oil Company, respectively, on the 2nd and 3rd days of February, 1931.

The date of the contract, the date of the delivery of materials, and the theory upon which the plaintiff sought to charge the appealing defendants with personal responsibility is expressed by the following excerpts from plaintiff's brief:

"This contract was made with McCulloch on January 12, 1931, and the materials delivered between January 12 and February 18, 1931. (Lien statement, C.-M., pp. 11-13.) All of these materials were delivered pursuant to this contract.

"This case was tried by the plaintiff, Clark Lumber Company, upon the theory that all of the defendants were mining partners, materials having been furnished by the plaintiff to the defendants between the 12th day of January, 1931, and the 18th day of February, 1931, according to the itemized statement attached to materialman's lien and shown in case-made at pages 11 and 13, inclusive."

Confusion of issues will be avoided by noting at this point that the plaintiff in seeking a personal judgment against each of the appealing defendants did not in the trial court and does not in this court rely upon any alleged express contract or agreement asserted to have been made by them whereby they personally bound themselves for the payment of the debt created by contract on January 12, 1931.

The personal judgment against the appealing defendants cannot be sustained. Generally, one who acquires an interest in a mining partnership does not become personally liable for the antecedent debts of the firm unless he expressly assumes the same. 40 C. J. 1149; Patrick v. Weston, 22 Colo. 45, 43 P. 446; Harris v. Young, 298 Ill. 319, 131 N. E. 670.. No such express assumption is pleaded or presented in this case. Nor does this case fall within any exception to the general rule as above stated. It is not contended that the mere delivery of material or a small portion of material pursuant to an antecedent contract by which a debt was created renders one who subsequently enters an existing or newly created mining partnership personally responsible for the debt created by the contract.

Thus assuming, without deciding, that plaintiff correctly contends that the Elm Oil Company and J. P. Flanagan became mining partners, the personal judgment against them must nevertheless fall by reason of the date of their entry into the asserted partnership arrangement.

There is in the plaintiff's brief certain general allusions to estoppel. But this case was not tried upon the theory of estoppel nor were the pleadings calculated to present such an issue. The plaintiff does not in its brief follow the general allusion with any assembly of facts said to constitute estoppel, nor state what the defendants were or are estopped from asserting or denying. In other words, a specific application of the doctrine of estoppel is not set forth except possibly upon a question of pleading which we shall subsequently refer to and which might be otherwise more accurately classified.

The statutes of this state contemplate that indebtedness created for material furnished for and used in erecting a derrick for drilling operations shall constitute a lien (section 10978, O. S. 1931), and provide that such a lien shall attach as of the date the first item of material is furnished (section 10978, supra), provided, of course, the lien is subsequently properly perfected. The statutes contained in chapter 54, O. S. 1931 regulating the manner of perfecting and enforcing mechanics' and materialmen's liens are made applicable to this type of lien (section 10981, O. S. 1931). If the lien is claimed under a contract direct with the owner, four months are allowed from the date of furnishing the last item of material in which to file a lien statement with the clerk of the district court (section 10976, O. S. 1931), but if the lien is claimed through a contractor, that time is shortened to 60 days (section 10977, O. S. 1931). Irelan v. Smoot, 132 Ok'a. 270. 270 P. 29.

The lien, subject to perfection by filing a statement (and serving a notice when notice is required) in the time and manner required by law, follows the property. Thus, as applied to this case, if the plaintiff acquired and preserved a lien on the oil and gas lease and drilling equipment, the interest of the appealing defendants subsequently acquired remained subject to that lien regardless of whether they were merely assignees of fractional interests or mining partners.

The question then arises: Did the Clark Lumber Company preserve its lien? The last item of material was furnished on February 18, 1931. A lien statement was filed on June 17, 1931, which was in time for a lien under a contract with the lease owner, but too late for a lien through a contractor. Was this lien through a contractor or direct with the owner?

The answer to this question depends upon the relationship of the parties connected with the lease at the time the contract was made on January 12, 1931. This question of fact was loosely tried in the court below and the evidence of both parties is somewhat unsatisfactory. It seems that in the trial of the cause the question of whether the Elm Oil Company and J. P. Flanagan entered into a mining partnership after acquiring their interest and an additional question of payment or accord and satisfaction so far overshadowed the question now being considered as to relegate it to the background.

The direct deal for the purchase of the material was made by one J. M. McCullough, to whom it was charged on the books of the plaintiff lumber company. Fred Cotton, managing officer of the Woodland Oil Company, the then lease owner, testified that McCullough was a contractor whose relationship with the transaction was severed about the time the appealing defendants acquired their interests in the property by reason of his (McCullough's) inability to perform the drilling contract. If this testimony had been accepted, the lien statement was not fi ed in time. But the trial court evidently did not accept it. Opposing the testimony of Cotton we are presented with the testimony of the man who hauled the material to the lease and who was an employee of the lease operator, not the lumber company. In general terms he advises that the operations were being jointly conducted by Cotton (who acted for the Woodland Oil Company), McCullough, and another man by the name of Spradlin. Though general and open to some question, we deem the testimony sufficient to establish that the operations were being conducted as a joint enterprise of the three named individuals, or by the Woodland Oil Company through its agents and sufficient to establish that when McCullough ordered the materials, he was acting for the Woodland Oil Company or for himself and the Woodland Oil Company, rather than as a contractor under the Woodland Oil Company. We are impelled to adopt a liberal attitude toward this testimony by reason of the failure of opposing counsel to challenge the correctness of the witnesses' testimony by detailed inquiry to test the accuracy thereof, and by reason of the failure to develop details showing a contrary relationship in connection with the testimony of Cotton or other witnesses.

In support of the trial court's judgment, we hold the evidence sufficient to establish that the contract for materials was made with the lease owner through McCullough, either as agent, partner, or coadventurer of

the lease owner, Woodland Oil Company. It follows that the appealing defendants acquired their interests subject to the lien.

We now turn to a question of payment or accord and satisfaction. After the appealing defendants had acquired their interests, some confusion arose between the parties interested in the lease as to the amount due the lumber company. While the confusion existed between the defendants, one of them, J. P. Flanagan, made out a check for $281.-20, which he thought was the amount of the bill. The check was payable to the lumber company and bore a notation to the effect that it was in "full settlement of account" and that "acceptance by endorsement" would constitute receipt in full. This check was dated April 4, 1931, and was given to Cotton for delivery to the lumber company. The lumber company upon receipt thereof and noticing the notation refused to endorse or cash the check until, as their testimony established, they were informed by defendants that the notation on the check would be disregarded, who told them to go ahead and cash the check and the balance of the bill would be paid. This testimony, though disputed, was evidently believed by the trial court. It is corroborated by the fact that the check was not cashed until July of 1931, almost three months after its delivery. The trial court's judgment was for the amount of the bill, less credit for the amount of the check.

In the trial of this case the appealing defendants set up this payment and introduced evidence in connection therewith. The plaintiff says that by reason of doing so they are estopped from denying personal liability for the balance. One person may pay a portion of another's debt without assuming liability for the balance. We know of no decisions to the contrary and none are cited. As a necessary corrollary, one can assert the payment, even assert that it constituted entire payment, without losing his right to deny liability on the unpaid balance on other grounds.

The judgment of the trial court is modified to relieve the appealing defendants from personal liability. As so modified, it is affirmed.

BAYLESS, V. C. J., and PHELPS, CORN, and GIBSON, JJ., concur.