## LYONS v. STEKOLL.

*96 P. 2d 60.*

No. 28748.   Oct. 17, 1939.

Rehearing Denied Nov. 28, 1939.

E. F. Maley, of Okmulgee, for plaintiff in error.

Steele & Boatman, of Okmulgee, for defendant in error.

DAVISON, J. This appeal involves an action in the district court, wherein the defendant in error and the plaintiff in error herein appeared as the plaintiff and defendant, respectively.

The claim upon which the plaintiff sought and obtained recovery against the defendant was for expenses he was alleged to have incurred in connection with the operation of an oil and gas lease.

After hearing the evidence, the trial

court found that the defendant was the owner of an undivided one-fourth interest in said oil and gas lease and that the plaintiff and defendant were mining partners in the premises.

The court denied the defendant recovery upon a cross-petition she had entered in said cause for the recovery of $375 which she alleged that the plaintiff owed her for gas he had used in his operations from one of her wells; and found that the plaintiff was entitled to the recovery of $873.81 as the defendant's proportionate share of the expenses he had incurred and that he was entitled to a lien on the lease for said amount. In accordance with these findings, judgment was entered decreeing the foreclosure of the lien thus established on the interest of the defendant in said lease.

In asserting error in the judgment of the trial court, the defendant first maintains that the evidence is insufficient to establish the creation or formation of a mining partnership between the plaintiff and defendant. She says that the evidence fails to prove the existence of the three following essentials of a mining partnership, namely: (1) Joint interest in the property by the parties sought to be held as partners; (2) agreements, express or implied, to share in the profits and losses of the venture; and (3) actions and conduct showing co-operation in the project.

With reference to the first of the above-named essentials, counsel for the defendant asserts that the evidence shows that neither she nor the plaintiff had a joint interest or were co-owners in the lease in question. This claim is based upon the undisputed fact that there is no legally recognized written instrument conveying to the plaintiff, by name, any interest in the lease, and the further fact that the defendant, herself, owned no interest in the lease at the time that most of the expenses here involved were incurred. It is apparently true that the only formal instrument of conveyance through which the plaintiff claims an interest in the lease is an assignment of an undivided one-half interest there-in, made, executed, and delivered, not to him, but to one Sam K. Viersen, as assignee, in the year 1934, yet the undisputed testimony shows that the purchase evidenced by said assignment was made by Viersen for himself and the plaintiff jointly. Thereafter this interest was shown upon Viersen's books as owned by the two in equal shares, or an undivided one-fourth each. The defendant also asserts that the plaintiff's interest, if any, in the lease was purely a contingent one, but the evidence shows that at all times since the purchase the plaintiff has occupied the status, not of a contingent, but of a present and actual owner of the property, and that he has exercised control over it as such. In the case of Barrett v. Buchanan, 95 Okla. 262, 213 P. 734, the fact that the interest of one of the owners of the lease was purchased and held in the name of another owner did not prevent him from becoming a mining partner with the other owners of the lease even before the interest was placed in his name, and this court in effect so held. Here, the defendant asserts that she and the plaintiff were not tenants in common in the property. If this were true, it would not be fatal to the creation of a mining partnership between them. A mining partnership may be formed between owners in other relations. See 18 R.C.L. 1200. And it has been said that even an equitable interest is sufficient to meet the requirement of ownership in a mining partnership established by joint operation. See Summers, Oil and Gas, vol. 4, sec. 722, p. 147. It is therefore our opinion that the manner in which the title to the plaintiff's interest in the lease was held, did not prevent him from being a mining partner of the defendant within the contemplation of the rules governing such associations.

As we understand the argument advanced on behalf of the plaintiff, he contends it is immaterial that the defendant owned no interest in the lease at the time that most of the labor and material in question were furnished. The theory upon which he seems to proceed is that

the lease was then owned by a mining partnership of which she later became a member and that her liability to him upon the claim sued upon is that of an "incoming" partner. As we view the facts of the present case and the law applicable thereto, the plaintiff's contentions are correct.

A portion of the expenses involved herein are monthly operating costs of the lease beginning with those of June, 1935, when the defendant's present interest in the lease was a part of the estate of M. C. French, deceased. It appears that on February 6, 1935, Georgia M. French, executrix of said estate, as the owner of said undivided one-fourth interest, had entered into a written contract with Sam Viersen wherein she agreed that he should operate said lease, have a lien on her interest for one-fourth "of any and all expenses in connection with the production, development or pulling and plugging of any of the wells" then located thereon, and be the "sole judge" as to the necessity of incurring said expenses. The testimony reveals that thereafter and until the year 1936, Viersen operated the entire lease, sharing the profits and losses therefrom with the executrix and the plaintiff. The plaintiff contends that a mining partnership was thus created. In this, he is correct. The relationship then existing between the three owners possessed all of the elements which counsel for the defendant correctly enumerated under his first proposition. See White v. A. C. Houston Lumber Co., 179 Okla. 89, 64 P. 2d 908.

Counsel for the defendant call our attention to the insufficiency of the evidence to prove any direct agreement between Georgia M. French, executrix, and the plaintiff. In our opinion, the absence of any such express agreement is immaterial. The important thing to the formation of the partnership is that they actually shared in the profits and losses from the lease and co-operated in its operation, even though their co-operation may not have been direct as between themselves, but with their mutual partner, Viersen.

Though in January, 1936, Viersen turned over the active supervision of the operations to the plaintiff, the lease was still being operated by and on behalf of the partnership, when on December 3rd of that year, Georgia M. French, executrix, assigned her one-fourth interest to the defendant. By this transfer, the defendant became a member of the mining partnership. One of the principal differences between a mining partnership and an ordinary partnership is "that one partner may convey his interest, or any part thereof, without the consent of his associates and without terminating the partnership and the transferee thereof becomes a partner, to the extent of the interest transferred, from the effective date thereof." Sturm v. Ulrich (C.C.A. 8th Dist.) 10 F. 2d 9.

We think this adequately disposes of the defendant's first proposition as well as her further contention that Georgia M. French, executrix, was a necessary defendant in the action. The executrix was not a necessary party to the action for the reason that when this action was commenced, the defendant had taken her place in the partnership and had succeeded to her liability with reference to liens that had already attached to the property of the partnership. See Willis, Thornton on The Law of Oil and Gas, vol. 2, p. 979, § 674.

An item of $721.83 in the plaintiff's claim is a one-fourth share of the expense of deepening one of the wells on the lease. This project was finished while the defendant's present interest was still a part of the French estate and months before she acquired it. Further error in the trial court's judgment is predicated upon the asserted insufficiency of the evidence to show that the defendant or her predecessor in title, Georgia M. French, executrix, ever authorized the deepening of the well or the expenditure of any funds for such a project. The evidence discloses that immediately prior to and at the time the plaintiff commenced operations to deepen the well in question, all of the conversations that he or any of his employees or associates had

with reference to the participation of the French interest therein were had with the defendant, who is the daughter of Georgia M. French and seems to have been assisting her in looking after the property at that time. The plaintiff introduced testimony to the effect that the defendant was advised of the plan to deepen the well and agreed that if he would advance the funds for said project, her mother would execute and deliver to him transfer orders on her share of the oil payments so that he would be reimbursed for her share of the expenses in connection therewith. The defendant denied this, and further denied that she ever had heard of the plan to deepen the well but thought that all the plaintiff intended to do with the well was to clean it out and "put it back on the power." Her counsel asserts that even though the evidence was sufficient to prove an agreement or contract as the plaintiff claims, he never alleged nor is there any evidence to prove that she was her mother's agent, and that since title to the one-fourth interest was in the name of her mother, as executrix, prior to and during all the time that the deepening of the well was being accomplished, and it was expressly stipulated at the trial that Georgia M. French never authorized the plaintiff to go upon the lease and operate the same, there is no way that the plaintiff's lien could have attached to said interest. On the other hand, counsel for the plaintiff assert that it was unnecessary for anyone (having the authority) to agree to the deepening of the well on behalf of the one-fourth interest in question. He says that since the plaintiff and Georgia M. French, executrix, were partners, each was the agent for and had the authority to bind the other in obligations necessary to the prosecution or furtherance of their joint enterprise. We think that there is some merit in this proposition, and that under certain circumstances it is unnecessary to prove that all of the members of a mining partnership have expressly authorized every particular obligation entered into on behalf of the partnership. All of the better authorities seem to

agree that the owners of the majority interest in a mining partnership control the enterprise, and may bind the property of said partnership by contracts within the legitimate scope of, and necessary for the proper operation of, the partnership business. See Willis, Thornton on Oil and Gas, vol. 12, p. 975, § 671; Summers, Oil and Gas (Perm. Ed.) vol. 4, p. 167, § 731; and the cases therein cited. In addition to the one-half interest in the lease or partnership property that the plaintiff owned jointly with Viersen, there was undisputed testimony to the effect that he owned another one-fourth interest in said lease. The ownership of a three-fourths interest in the lease made plaintiff and Viersen the owners of the majority interest in the partnership property, and it was unnecessary for them to procure the authorization, agreement, or consent of the executrix to the creation of obligations necessary for the proper operation of the partnership business.

The defendant maintains, however, that the deepening of the well, in connection with which the debts in question were incurred, was unnecessary and unjustified.

The evidence discloses that when the well was originally completed years before the parties to this controversy became the owners of the lease upon which it was located, it was drilled to a total depth of 2,669 feet, where salt water was encountered, and plugged back to an oil sand at 1,950 or 1,952 feet, from which it produced approximately eight barrels of oil per day. It was still producing from this depth at the time the plaintiff drilled it to a depth of approximately 2,450 feet and incurred the expenses here involved. The defendant bases her contention that this deepening of the well was unjustified upon the fact that the log of the well on file with the Corporation Commission at the time the plaintiff commenced the project did not reveal that any oil was encountered at the 2,450-foot level when the well was originally drilled. She further relies upon the testimony of one of the former

lessees who had been interested in the original drilling of the well, and a Mr. Hewitt, who testified that he had been in the oil producing business for a considerable part of 30 years in the same county in which the lease in question was located. The essence of the testimony of both of these witnesses is that, considering the history of the well, they would have considered it inadvisable to deepen it.

The plaintiff introduced no evidence to directly refute the above-mentioned testimony, and we do not deem the absence of such evidence fatal to his cause. The general purpose of the usual oil and gas mining partnership is twofold, including the development as well as the operation of oil and gas properties or leases. The development of an oil and gas lease comprehends the exploration of untested oil sands lying thereunder. This can be accomplished either by drilling new wells on the lease or deepening the wells already drilled. In the present case, the deepening of the well to the 2,450-foot sand cannot be said to have been unjustified because the original log of said well revealed no oil at that depth, since the result of further drilling proved the log to be erroneous in that respect. By deepening the well, the operators found that there was oil in the 2,400-foot sand, even though it was in small quantities, As it cannot be said that the deepening of producing wells is beyond the scope of the ordinary business of an oil and gas mining partnership such as the one in question, we think that partners owning the majority interest in the partnership property can bind the owner or owners of the minority interest for the payment of the reasonable expenses thereof, without the latter's specific consent or authorization.

The defendant next asserts that the judgment of the trial court is not supported by the evidence for the reason that there was no competent evidence introduced to show that the sums claimed by the plaintiff for labor and materials furnished were the reasonable value of same. The plaintiff's itemized statement of the cost of his operations on the well in question contains charges for oil well casing, various kinds of other equipment, and the labor of various employees, totaling the sum of $2,887.31. According to the statement, $20 was charged for each eight hours of labor that was performed in cleaning and bailing out the well and drilling it deeper. Fifty cents per foot was charged for the casing. The charges for these two items made up the major portion of the bill, and the plaintiff introduced testimony to the effect that they were reasonable. The plaintiff's driller, Frank McMann, testified that the total of $2,887.31 was a reasonable cost for such a project. We think the evidence mentioned was sufficient to establish the reasonableness of the plaintiff's claim in the absence of evidence to the contrary.

As we find no insufficiency in the evidence fatal either to the establishment of the plaintiff's claim or to the existence of a mining partnership between the plaintiff and the defendant, we hold that the trial court committed no error in determining that the plaintiff was entitled to a lien therefor against the defendant's interest in the lease and decreeing the foreclosure of same. One of the particular rights which a member of such a partnership possesses is the right to a lien upon the shares of his partners in the partnership property for funds he has advanced for the operation of said business in excess of his share of said expenditure. See Barrett v. Buchanan, supra; Kennedy v. Beets Oil Co., 105 Okla. 1, 231 P. 508; Black v. Wickett, 127 Okla. 53, 259 P. 642; Ferguson v. Nagle, 159 Okla. 219, 15 P. 2d 1. In the present case, the plaintiff's lien had attached to the lease involved before the defendant became a member of the partnership operating it, and she took her interest subject to that lien. A claim that she did not authorize the expenditures or even that she had no knowledge that they had been made is no defense to her. In the testimony concerning her conversations with the plaintiff and his employees or asso-

ciates before her acquisition of an interest in the property, there is sufficient evidence to support the conclusion that she knew of the relationship which then existed between the owners of the property. This knowledge was sufficient to put her on notice of any liens created by the operations of the partnership upon the lease. See Willis, Thornton, Oil and Gas, supra; Duryea v. Burt, 28 Cal. 569; Wells v. Shriver, 81 Okla. 108, 197 P. 460.

The last proposition set forth in the defendant's brief is that the court erred in not allowing her a recovery on her cross-petition. This was the price the defendant claimed for gas the plaintiff had used from one of the wells on the lease in question in drilling a well on another lease in which he was interested. Evidently the court based its judgment upon plaintiff's evidence to the effect that he had allowed her a sufficient credit for this gas. Since the defendant introduced no evidence which would in any way tend to refute the plaintiff's evidence upon the matter, the trial court's judgment in regard thereto cannot be said to be against the weight of the evidence.

Having found the judgment of the trial court correct in every particular in which it was alleged to be erroneous, we must affirm the same. It is therefore so ordered.

WELCH, V. C. J., and RILEY, GIBSON, and HURST, JJ., concur.