HURST et al. v. BROWN.

No. 33838.    May 1, 1951.

Rehearing Denied June 5, 1951.

Application for Leave to File Second Petition for Rehearing Denied July 17, 1951.

*233 P. 2d 965.*

Clem H. Stephenson, Wewoka, for plaintiffs in error.

B. F. Davis, J. A. Patterson, and, Earl A. Davis, Wewoka, for defendant in error.

HALLEY, J. The parties will be referred to by name or as they appeared in the court below.

Herman L. Hurst owned an oil and gas lease on the S/2 of the NW/4 of sec. 20, twp. 6 north, range 7 east, in Seminole county, Oklahoma, known as the Gaines Lease. He talked with the plaintiff, H. O. Brown, T. H. Burroughs, and W. F. Singley about getting an oil well drilled on this 80 acres. He told them he would give them a one-sixth interest each in the lease if they would get someone to put up $4,000 to drill the well, and that he would give that person a one-fourth interest. Brown and Singley prevailed upon W. D. Garrison to put up the $4,000. Garrison's interest was not to be burdened with the expense of completing the well into the tanks after it had been drilled

in. The well known as the Gaines No. 1 was drilled in and was a producer. Brown advanced the money for completing the well into the tanks. He purchased Garrison's interest in the lease for $5,000. He also acquired the one-sixth interest of T. H. Burroughs, which with what he had totaled a seven-twelfths interest of the whole. The plaintiff claimed that he, Singley, and Hurst were to bear the expense of drilling and completing the well over and above the $4,000 advanced by Garrison. Hurst denied this claimed that that expense should be borne by the Brown, Burroughs, and Singley interests, and that his interest was to be carried free until the well was completed with oil flowing into the tanks, and that his only expense was to be his share of the operation expense. The total cost of completing this well was $9,013.32, of which Brown paid $4,945.92.

After the Gaines No. 1 well came in, Brown, Hurst, and Singley decided to acquire some other leases. With money advanced by Brown, three leases were acquired: The Jackson Lease, which covered the E/2 of the SE/4 of sec. 20-6-7; the Hailey Lease, which covered the W/2 of sec. 20-6-7; and the Harber lease, by which they obtained 25 acres of the 40 acres which was the NE/4 of the SW/4 of sec. 20-6-7. Hurst owned the lease on the Rebecca Payne land, which was the S/2 of the NE/4 of sec. 20-6-7. It was Brown's contention that the Jackson, Hailey, and Harber leases were to be owned by himself, Singley, and Hurst, and that each was to pay one-third of the cost. The Rebecca Payne lease was in Hurst's name to the extent of 75/80ths. There was a five-acre interest out. Brown claimed that this lease went into the partnership; Hurst denied it.

On April 23, 1946, Hurst assigned a one-sixteenth interest each in the Gaines lease, insofar as it covered the SE/4 of the NW/4 of sec. 20-6-7, to J. A. DeLaittre and Frank Vroman. On August 16th, Hurst conveyed a 1/16 interest to Vroman in the Hailey lease, the W/2 of SE/4 of sec. 20-6-7, and a 1/32

interest to the DeLaittre trustees, and a 1/32 interest to J. A. DeLaittre, who in turn conveyed to the DeLaittre trustees. On February 8, 1947, he conveyed 1/8 each of the Payne lease, the S/2 of NE/4 of sec. 20-6-7, to Vroman and the De-Laittre trustees. The DeLaittre trustees became vested with all interests that were assigned either to them or to J. A. DeLaittre. Hurst also conveyed a 5/12 interest in the Payne lease to his wife. She disposed by assignment of sufficient interest to reduce hers to 1/4.

In August of 1497 a deal was made with Comet Oil Company, a partnership, selling them all the interests outstanding in the lease owned by parties to this action except the Vroman and DeLaittre interests.

Judgment was entered against Herman L. Hurst in the sum of $3,502.01, which covered $1,124.49 as his share of completing the Gaines No. 1 well, and $107.94 for operating the same; $800.31, his share of the expense of drilling the Gaines No. 2 well; $510.05, his share of the expense of drilling the Hailey No. 1 well; $185.01, his share of the attorney fee and court costs in a lien foreclosure case and digging the slush pit on the Payne lease; $775.22 as his share of abstract bills, J. D. DeBois' attorney fee, revenue stamps, lease bonuses, office rent, and sign. Judgment was entered against Frank Vroman in the sum of $1,421.61, which covered $640.16 as his share of completing the Gaines No. 1 well and $53.97 as his share of the operating expense of said well; $400.15 as his share of the expense of drilling the Gaines No. 2 well; the finding omitted it, but there was included in the judgment $271.77 as his share of the expense of drilling the Hailey No. 1 well and $55.56 as his 1/16 share of expense of a $750 fee to Glen Wallace; $35 court costs; and $104 to Shawver & Hailey for digging the slush pit on Payne lease. Judgment for a similar amount and for the same items was entered against the DeLaittres.

Plaintiff was awarded a lien against the interest of Vroman and the De-Laittres until the judgment against them was satisfied.

The garnishee bank was directed to pay to the receiver the $2,500 that it held to pay drafts of Herman L. Hurst and Gustille Hurst.

Defendants were denied any relief on their cross-petition, and the partnership was dissolved.

We shall consider the items of expense on the different leases. So far as Gaines No. 1 is concerned, since it was a producer, the expense of drilling and completing it should be taken from the income from the well. DeLaittre and Vroman never assumed any part of the expense of drilling and completing that well, but since their assignor had done so and they were aware of the mining partnership, the income from the well should be good for the expense of drilling and completing. Elm Oil Co. v. Clark Lbr. Co., 179 Okla. 341, 65 P. 2d 1221; Lyons v. Stekoll, 186 Okla. 94, 96 P. 2d 60; 58 C.J.S., Mines and Minerals, §246, sub. (c). So no personal judgment should have been rendered against the DeLaittre group and Vroman on the Gaines No. 1 well. The expense of drilling and completing would be a prior lien against the well. The expense of operating the well was properly decreed to be a personal liability of the defendants.

As to Gaines No. 2 and Hailey No. 1 wells, counsel for the DeLaittres and Vroman concedes in his brief that they were to share the cost of these wells, which they have not done; and a personal judgment against them for their share of this expense is proper.

There was a slush pit dug on the Payne lease, the expense of which is not chargeable against Vroman and the DeLaittres, as they did not acquire their interest in this lease until after the pit was dug, and there is no evidence that they assumed this obligation; so a personal judgment against them on this item was not proper. Elm Oil Co. v. Clark Lbr. Co., supra. However, the claim is properly a lien

against the Payne lease in favor of Brown, the mining partner, who paid the bill. Hatten v. Interocean Oil Co., 182 Okla. 465, 78 P. 2d 392, 116 A.L.R. 727.

As to the claim against Herman L. Hurst, there is sharp difference in the testimony. Hurst testified that he was not to be charged with the expense of completing the Gaines No. 1 well, but plaintiff produced testimony that Hurst was to be bound, and it was sufficient, in our opinion, to bind him. That he was properly charged for his share of the expense of Gaines No. 2 and Hailey No. 1 is not questioned. There was a conflict in the testimony as to Hurst's liability for the expense of the slush pit on the Payne lease, but the holding of the trial court was not clearly against the weight of the testimony on this point. The items of office expense are also sustained. Whether or not the plaintiff agreed to pay all partnership debts at the time of the sale to Comet Oil Company was considered by the trial judge, and he arrived at the opinion that the plaintiff did not assume such an obligation, although the testimony was conflicting on this point. We see no reason to disturb this finding.

The one-fourth interest of Gustille Hurst in the Payne lease was sold by her to Comet Oil Co. for $1,500. This money was impounded by the garnishment proceedings. The testimony reveals that she paid $500 to her husband for this interest, together with some others. There is no evidence that at the time she acquired this interest this payment was inadequate, nor is there any evidence that at the time her husband deeded this interest to her he was insolvent. There were no grounds for the entry of the judgment against her, and the $1,500 of hers that is being held by the garnishment proceedings should be released. See Security State Bank of Comanche v. Lockett et ux., 185 Okla. 320, 93 P. 2d 756. It is to be remembered that when the Comet deal was under consideration all knew of Mrs. Hurst's interest in the Payne lease, and no one claimed that it belonged to Herman Hurst or to the partnership; and when she insisted that her part should be paid separately, no one protested.

Inasmuch as this is a matter of equitable cognizance, we think the judgment against Herman Hurst should be increased in the amount that the personal judgment against Vroman and the De-Laittres was decreased.

The judgment is modified and affirmed as to Herman L. Hurst and reversed as to Gustille Hurst, and reversed in part as to the DeLaittres and Vroman, with directions to the trial court to render judgment to conform with the views herein expressed.

ARNOLD, C.J., LUTTRELL, V.C.J., and WELCH, GIBSON, JOHNSON, and O'NEAL, JJ., concur.