J. E. CROSBIE, Inc., v. KING et al.

No. 30427. Jan. 12, 1943.

Rehearing Denied Feb. 2, 1943.

Application for Leave to File Second Petition for Rehearing Denied Feb. 9, 1943.

*133 P. 2d 543.*

C. A. Steele and W. A. Daugherty, both of Tulsa, for plaintiff in error.

King & Rogers, of Ada, Anglin & Stevenson, of Holdenville, and W. A. Delaney, Jr., and Vernon Roberts, both of Ada, for defendants in error.

BAYLESS, J. J. E. Crosbie, Inc., a corporation, filed an action in the district court of Pontotoc county against Edna King et al., executors of the estate of B. C. King, deceased, to establish a lien claim, as mining partner, against the interest of King, deceased, in the partnership property and to foreclose the same, and appeals from a judgment adverse to it. In the course of the action, another action brought against W. A. Delaney, Jr., arising out of the same facts and for the same purpose, was consolidated with this action for trial and appeal. All those opposed to Crosbie will be referred to collectively as defendants.

Defendants owned leases on two tracts of land in Pontotoc county, and conveyed one-half interest therein to Crosbie as consideration for specified drilling thereon and as a part of the deal conferred on Crosbie the management and control of the leases in the following language:

"The party of the second part shall have the management and control of the operations upon said leased premises."

The contract provided for a division of the expenses of operation, the furnishing of monthly statements of account by Crosbie, and the obligation of the defendants to pay.

Several wells were drilled on each lease, and later began to produce salt water, and the disposal of this salt water became a problem. Several plans and methods for doing this were discussed, and eventually Crosbie advised defendants of its intention to join the Fitts Salt Water Disposal Association to dispose of the salt water produced, and the defendants strenuously objected. Nevertheless, Crosbie joined, and as a result was permitted to dispose of salt water from its own leases as well as those wherein it had an interest, as in the two leases involved. Crosbie paid its share of the cost of organizing the association, and thereafter paid for the salt water it tendered to association for disposal. Crosbie then billed defendants for their respective shares of this expense, and defendants refused to pay. They do not contend that their refusal to pay is based on a dispute over the correctness of the calculation of the amount charged, but base their refusal on certain legal contentions relating to their legal liability to pay anything.

Crosbie raises an issue of whether this is a law action wherein a jury is proper or an equity action wherein a jury is permissible but whose verdict is advisory. Crosbie argues that if it is a law action, certain instructions given on fundamental issues are erroneous; and, if it is an equity action, while no error can be predicated on the giving of such instructions, nevertheless these instructions are evidence of an erroneous concept of the law that was applied by the trial judge in rendering judgment. It is argued that error was committed against Crosbie on either theory.

Defendants take no definite stand in their brief on the status of the action as sounding in law or in equity. They assert it is sustainable on either basis. In the course of oral argument, counsel for defendants conceded the issues actually tried and involved here are prop-

erly triable in equity. Under the rule in Philbrick v. Puritan Corp., 178 Okla. 489, 63 P. 2d 38, it would seem that there was no issue herein that was proper to be considered by a jury. The denial of the debt was based upon issues of law relating to the extent of the agency to bind the copartners, and the issue of fact of good faith, which are properly addressed to equity in foreclosure actions. These issues relate to the right to a lien.

Crosbie states several issues on which it bases errors alleged to have been committed against it, but it assumes to discuss the issues under one general head:

"The sole and only issue for determination is: Did the plaintiff incur the expenses sued for, in the exercise of its best judgment in good faith?"

Defendants urge that several distinct points were argued under this general head, and divide there answering argument into three points: (1) The act of the plaintiff in joining the Salt Water Disposal Association is beyond the scope of its authority as managing agent; (2) plaintiff is not entitled to recover because it was guilty of bad faith; and (3) the judgment of the trial court should be sustained.

1. We think it should be noticed at this point that our laws, 29 O. S. 1941 § 273, 52 O. S. 1941 § 296, and 82 O. S. 1941 § 901, imposed certain duties on these joint venturers to safely dispose of the salt water, and imposed certain restrictions thereon, and imposed criminal as well as civil liabilities for the nonobservance. Thus the joint venturers, acting through the managing partner, were obliged to dispose of this salt water in conformity with law, and at their joint proportionate expense. Lyons v. Stekoll, 186 Okla. 94, 96 P. 2d 60.

Defendants do not dispute these legal obligations, and while it seems conceded that defendants are obliged to pay for their proportionate share of the cost of disposal, no offer is made by defendants to compensate Crosbie for this necessary expense, and all defendants seek to defeat Crosbie entirely and to leave Crosbie uncompensated.

Defendants' argument, under their contention that Crosbie's act in joining the association was beyond the scope of its authority, is really much broader. Under this it is urged (1) that the method of disposal used by association is "impracticable, idealistic, excessive and disproportionately excessive, . . ."; (2) that it will subject these defendants to liability and financial loss in the nature of damage suits; (3) the method of disposing of salt water adopted by Crosbie is not the most economical, and on the contrary is excessively costly; (4) that it amounts to the managing partner taking these nonassenting partners into a new partnership or venture without their consent; and (5) it is outside the scope of Crosbie's authority. We take this last to relate solely to the joining of the association, and not to mean that the disposal of the salt water was beyond Crosbie's authority as managing partner.

The plan of the organization of the association and its method of disposing of salt water were set out at great length in the testimony and discussed in the briefs. There is no evidence that the method of disposing of the salt water is impracticable or idealistic. In fact, Delaney actively promoted a similar plan. We may dispose of this contention by again saying there was no proof that it is impracticable or idealistic.

The proof that great financial loss is threatened because the association pumps the salt water into a subterranean strata of pure water and pollutes it, and may become liable to other users of this water, is wholly speculative. It rises to no greater certainty than the evidence in Sunray Oil Co. v. Cortez Oil Co., 188 Okla. 690, 112 P. 2d 792, which was held to point to no more than a possibility and to be insufficient.

As to the contention that the method of disposal adopted is too expensive, and is not the least economical, there

is some comparative evidence. It must be recognized that the so-called pit method of evaporation has long been in use, and when the cost of this method is limited to the expense of digging the pit and the expense of evaporating the water, it is a relatively inexpensive method. That it is not a safe method is attested by the many lawsuits that have arisen and still arise from pollution occasioned when these pits are overflowed, or are overflowed by rainwater, or the dike breaks or water is lost by seepage or other apparently unavoidable incidents. There is scarcely a more fruitful source of litigation, as is disclosed by the docket and decisions of this court. When this item of cost, which is not a speculative matter, is taken into account, the pit method may not be so inexpensive. Crosbie contends the most economical method of disposal is to turn the salt water onto the ground or into water courses and take the chance on minimizing the recovery in the resulting damage actions. This last method is, of course, against the law, and is not to be contemplated nor tolerated, and we must keep in view legal methods of disposal, and all of these are costly. The adoption of any legal method is a matter of judgment, and this leads us to say that the disposal method now being used by Crosbie cannot be condemned as being utterly impractical. This method consists of gathering salt water, piping it to a well, and there pumping it into some subterranean strata. Several of the larger companies in the industry are using this method in the Fitts field and in other states, where facilities permit. It seems to be a method that is somewhat experimental to satisfy the industry's desire to develop a more satisfactory method than the pit method. As stated above, Delaney himself actively promoted the anticipated organization of such a disposal plan, and when his projected plan is compared with the one in use, the most that can be said for or against either is: It is a matter of judgment. Lyons v. Stekoll, supra.

All of the authorities are agreed that partners assume the risk of loss that comes from bad judgment. Lyons v. Stekoll, supra. All that is required of a managing partner is good faith (we treat this separately later), and reasonable skill and diligence. Gilmore on Partnership, 373, § 128. All partners share equally losses occasioned by the bad judgment of any one partner. A managing partner is not liable alone for a loss occasioned by honest error, or by bad judgment. Rowly, Modern Law of Partnership, pp. 452 and 458. See, also, 30 Cyc. 452, § 20.

Defendants assert that Crosbie has exceeded the authority vested in it by taking these defendants into another legal relationship equivalent to a partnership or joint venture without their consent and against their will. The general rule of law is that a partnership is created only by the assent of the parties, and while there is some modification of the rule of changing partners in a mining partnership, we think the rule applicable to general partnerships would preclude Crosbie joining the defendants in a new partnership. In any event Crosbie denies that it did this. Crosbie says that it joined the association, but it made no effort to make defendants members. The exhibit showing Crosbie's acceptance of membership in the association does not mention any of defendants. Defendants share association's facilities through Crosbie. Two effects flow from the act of Crosbie, in joining the association and in adopting this method of disposal, that can affect defendants. One is to render them liable for a share of the cost. A share of the cost of disposing of this salt water already rested upon them, and the degree to which this cost as a loss or detriment to them may have been increased has been discussed. The other relates to the liability for damages as tort-feasors for the pollution of the strata into which the salt water is injected. Without discussing again the likelihood of this, we doubt it is fairly an issue here. Crosbie says (1) that no one joined the association except it, and that since it is only an agent for the others and acting contrary to their expressed desire, they cannot be held as

joint tort-feasors. Crosbie says (2) the extent of defendants' liability for any judgment rendered would be their share of Crosbie's liability. We think all of this is academic, and can be properly disposed of in an action involving the issue of such liability. Here we are confronted only with these defendants' share of the cost of disposing of the salt water.

Defendants assert that Crosbie's authority was limited to the boundaries of the lands involved. We think this is too narrow a view to take with respect to the salt water. We think a reasonable discretion permitted Crosbie to decide whether to dispose of the salt water on or off of the premises. Delaney intended to offer Crosbie similar facilities at a much greater cost. We think what we have said disposes of the issue of the lack of or abuse of authority.

2. We come now to the issue of bad faith. By law, 54 O. S. 1941 § 10, and by contract, these parties owed each other the good faith their legal relation to each other compels. As seen from the authorities quoted above, the elements of bad faith, fraud, and culpable negligence render the managing partner liable for loss connected therewith. The charge of bad faith is based on one incident. In the trial of this case it was discovered that about the time Crosbie joined the association, it drilled one of the wells drilled by association to be used as a part of its disposal system, and received the sum of $14,000 or more therefor. It is conceded Crosbie did not tell defendants of this, and that defendants knew nothing of this until the trial. When this was disclosed in the course of the trial defendants received permission to amend their answers and did so by alleging the drilling of this well and the receipt of compensation therefor by Crosbie, and alleged further:

"That by reason of the fact, the plaintiff received compensation from said Fitts Salt Water Disposal Association, and did not make a full and frank disclosure of that fact to the defendant or their associates, that the same constitutes an act of bad faith toward the defendants and their associates in violation of the duties of good faith owed by the partners each to the other, therefore, plaintiff is not entitled to recover herein."

In defendants' brief and oral argument it is charged that Crosbie was induced to join the association by the award of the contract to drill the well, and that it profited from joining the association at the expense of defendants, and thus was guilty of bad faith. There is no charge that defendants were entitled to any part of the money received, or that the fact Crosbie, rather than some other driller, drilled the well for association increased the cost sought to be charged to Crosbie and defendants, or that there was any agreement, express or implied, between Crosbie and defendants that Crosbie should not engage in other ventures. In short, the argument of defendants is that Crosbie was influenced to join the association by the money it made for drilling the well. This argument is argument only and wholly unsupported by any evidence.

The law permits a partner to engage in other business unless his partnership contract provides otherwise. 54 O. S. 1941 § 38, and Gilmore on Partnership, 383, § 132.

There was no duty on Crosbie to advise defendants what it did in its ventures wherein defendants were not involved as participants. Crosbie owned other leases and interests in this field wherein defendants were not interested. Defendants were unalterably opposed to joining association or to using its facilities and the fact that Crosbie drilled this well for association would not have influenced defendants to change their view. All in all, the failure by Crosbie to disclose that incident to defendants was not a violation of the confidential relation.

Unless the award of the contract to Crosbie and the profit from drilling this well had an influence on Crosbie's decision to join association that was inimical to the duty owing to defendants as their managing agent, no charge of bad faith could be sustained. As pointed out

above, there is no evidence to support the charge of bad faith made by defendants against Crosbie.

3. The argument that the judgment of the trial court should be sustained is generally covered by what has been said on the specific issues already discussed. There is no occasion to say more under this heading.

The judgment of the trial court is against the law on the law issues and is clearly against the weight of the evidence on the one fact issue. Therefore, the judgment is reversed and the cause is remanded for further proceedings not inconsistent with the views expressed herein.

CORN, C. J., and RILEY, HURST, and ARNOLD, JJ., concur. GIBSON, V. C. J., and OSBORN, WELCH, and DAVISON, JJ., dissent.