[No. 42921.    En Banc.    June 20, 1974.]

MORTON E. BASSAN et al., Appellants, M. L. GROUT, Plaintiff,
v. INVESTMENT EXCHANGE CORPORATION et al.,
Respondents.

Schweppe, Doolittle, Krug, Tausend, Beezer & Beierle and
Robert R. Beezer, for appellants.

Laurason T. Hunt and Robert Earl Smith, for respondents.

UTTER, J.—The appellants are limited partners in Auburn
West Associates, and the respondent Investment Exchange

Corporation is the sole general partner. This action was brought for an accounting and dissolution upon the theory that the general partner had, in purchasing land and selling it to Auburn West Associates, derived profits without the consent of the limited partners in breach of its fiduciary relationship. The cause was tried to the court which dismissed the action after hearing the evidence.

The controlling issue in this case is whether the partners consented to the profit made by the general partner in the sale of the Murakami property to the partnership. We find an absence of such consent in the record and reverse the trial court.

In 1964 Investment Exchange Corporation, a Washington corporation, formed Auburn West Associates as a limited partnership. The purpose of the partnership as stated in the articles of partnership was

[t]o initially acquire, for investment, improve and hold for lease or resale, a tract of real property. The General Partner presently is the owner of interests in said real property. To additionally acquire from the General Partner such other adjacent and contiguous tracts as, in the sole determination of the General Partner, will enhance the Partnership properties and objectives.

The general partner was given broad discretion in the articles to manage the affairs of the partnership and they acknowledged the right of all partners, including the general partner, to engage in

and/or possess an interest in other business ventures of every nature, and description, independently or with others, including but not limited to the ownership, financing, leasing, operation, management, syndication, brokerage and/or development of real property; . . .

They also gave the general partner the right to have an interest in or be employed by another business which might deal with the partnership.

The articles provided that the general partner might devote such of its time as in its discretion it deemed necessary

to the partnership affairs and business, and that it should be reimbursed by the partnership for all the costs and expenses which it incurred in connection therewith, in addition to its respective share of the profits of the partnership.

The partnership articles provided that 100 units of the partnership, consisting of 40 units as general partner and 60 units as limited partner totaling $100,000, should be given to the general partner as partial payment of the purchase price of the original piece of real property, the purchase price being $593,000. That price was greater than the acquisition cost to the general partner.

Each of the appellants owned one or more limited partnership units. The remaining 29 limited partners did not elect to join in the action.

The general partner annually mailed out a financial statement to the limited partners. These financial statements advised the limited partners of the price the partnership paid for the real estate purchased from the general partner. The limited partners were represented at the partnership council meetings by plaintiff Milton Grout and others.

The last transaction upon which the appellants claimed a right to receive the benefit of the profit made by the general partner was the Murakami property. All claims by the limited partners except that one were held barred by the statute of limitations.

The general partner had formed a real estate subsidiary and informed the limited partnership it intended to utilize this corporation as sales and purchase agent for partnership property. The court found the articles of limited partnership and prospectus had authorized the real estate subsidiary to retain commissions on sales and purchases. This subsidiary received a $24,500 commission from Murakami in the sale of the property in addition to the markup of $167,500 by the general partner.

The court found that in the issuance of the prospectus, the publication of financial statements and in its dealings with the appellant and its conduct of partnership affairs, the

general partner made no false or fraudulent representations and did not engage in any improper conduct. It found no breach in its fiduciary obligations to the limited partners inasmuch as the price charged for the Murakami parcel was fair and the amount of profit made by the general partner was reasonable. There is no substantial dispute regarding the facts in this case and all of the claims prior to the Murakami transaction are barred by the statute of limitations. The validity of this transaction is our only concern in this appeal.

■ Under the Washington Uniform Limited Partnership Act, the general partner has all the rights and powers, and is subject to all the restrictions and liabilities, of a partner in a partnership without limited partners. RCW 25.08.090. He is therefore accountable to the limited partners as a fiduciary. *Homestake Mining Co. v. Mid-Continent Exploration Co.*, 282 F.2d 787 (10th Cir. 1960). The Washington Uniform Partnership Act requires every partner to "account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the . . . conduct . . . of the partnership . . ." RCW 25.04.210(1).

■ The partnership agreement does not provide consent by the limited partners to the general partner for a profit on the sale of the Murakami property to the partnership. The articles contain no provision setting forth the price to be paid for this property nor any method for determining such a price. Partners may include in the partnership articles practically any agreement they wish and if the asserted self-dealing was actually contemplated and specifically authorized with a method for determining, in advance, the amount of the profit it would not, ipso facto, be impermissible and deemed wrongful. *Riviera Congress Assoc. v. Yassky*, 264 N.Y.S.2d 624, 48 Misc. 2d 282 (1966). Here, however, the partnership agreement is silent as to any formula to determine the general partner's profit.

The prospectus, from which it could be argued most earlier purchases by the partnership from the general partner were contemplated, does not mention the Murakami piece. It also fails to set forth a formula to determine the general partner's profit in either the anticipated purchases or in any future transactions by the general partner on behalf of the partnership. The articles of limited partnership merely state that five parcels, the Henack, Nelson, Coast No. 2, Belus and Coast No. 1 were to be acquired at a cost of $593,000 from the general partner. The prospectus disclosed that the general partner intended, as well, to acquire the Davis parcel for $50,000 but the articles and prospectus do not specifically describe any other anticipated acquisitions.

Neither the articles nor prospectus disclose the actual amount of the profit to be made by Investment Exchange Corporation in their resale of properties to the Auburn West Associates partnership. The only source of information to the limited partners on the profits by the general partner was an accounting footnote in the 1964 partnership financial statement issued after the limited partners had invested funds in the partnership, indicating that property acquired by Auburn West Associates for $642,342 had previously cost the general partner $459,000.

The only other report indicating the amount of profit to the general partner was found in a prospectus required by the Securities and Exchange Commission. This indicated that from May 1964 through December 1965, prior to the Murakami purchase, Auburn West Associates had acquired eight parcels of property from Investment Exchange Corporation for $749,250 which property had cost Investment Exchange Corporation $488,221.

An investigation of the separate transactions prior to the Murakami purchase showed no consistent percentage of profit taken by the general partner on these transactions. Of those parcels described in the prospectus to be acquired by the general partner, the highest profit received was $67,000 on a piece sold for $182,000 (the Henack parcel). The smallest was a $20,000 profit on a piece sold for $80,000

to the partnership (the Belus parcel). Of those properties not described in the prospectus, and purchased subsequent to those described in the prospectus, the highest profit was $80,000 on a piece sold for $108,750 to the partnership (the Layos parcel) and the lowest was $24,000 on a piece sold to the partnership for $50,000 (the Davis parcel).

The trial court found an understanding did exist that the general partner would acquire property and sell it to the partnership at a fair price and would realize a profit on the transaction. It did not and could not find that a formula existed or was agreed upon explicitly or inferentially that established a basis upon which the exact amount of this profit was to be determined. The limited partners, therefore, could only consent after the fact to whatever profit the general partner determined it should have as to a particular transaction. Because of this, although the limited partners may have consented after the fact to specific profits taken on previous transactions, this could not imply consent to the Murakami transaction because the limited partners could not know what the profit to Investment Exchange Corporation was until after the sale closed.

No consent may be implied from the conduct of the limited partners regarding Murakami after they were informed of the profit. The formal action of Investment Exchange Corporation adopting the $167,500 profit was on November 15, 1969, and suit was brought on November 26, 1969, by appellants.

Where consent is lacking, the general partner is held under RCW 25.04.210, as a trustee, to account to the partnership for any profits derived by it. That standard, by the terms of the statute, is not whether the general partner acted fairly and reasonably, but whether it acted as a fiduciary.

The benefit of this standard is nowhere more apparent than in a limited partnership of this nature. The articles give the general partner the authority to conduct "any and all of the business of the Partnership . . ." Once the

limited partner has joined the partnership he has no effective voice in the decision-making process. He must, then, be able to rely on the highest standard of conduct from the general partner. Any deviation from this must be clearly stated in terms that would give the limited partner the option of deciding whether or not, in the first instance, to join the partnership.

The duty of loyalty resulting from a partner's fiduciary position is such that the severity of a partner's breach will not be questioned. The question is only whether there has been any breach at all. *Meinhard v. Salmon*, 249 N.Y. 458, 164 N.E. 545, 62 A.L.R. 1 (1928).

This is to be distinguished from questions related to the use of business judgment of a partner in partnership affairs. Here the degree of care required is one of reasonableness, or in some jurisdictions, of good faith. *Bohrer v. Drake*, 33 Minn. 408, 23 N.W. 840 (1885); *cf. J.E. Crosbie, Inc. v. King*, 192 Okla. 53, 133 P.2d 543 (1943); Note, *Fiduciary Duties of Partner*, 48 Iowa L. Rev. 902 (1963). This is the standard the trial court apparently applied.

This case does not involve the issue of whether the general partner is entitled to make a profit for use of its expertise. Compensation may be provided for the general partner by specific consent of the parties. There is also no issue about the general partner's right to be reimbursed for its expenses. Article 8, section 2 of the partnership articles provides that the general partner shall be reimbursed for all the costs and expenses it incurs in the devotion of its time to the partnership business.

Investment Exchange Corporation did not act in a fiduciary capacity regarding the profits it obtained in the Murakami transaction. Consent was not given by the appellants as to the profit taken in that transaction and Investment Exchange Corporation should be held accountable to the partnership for the profits it there realized.

This will result in the establishment of a common fund for the benefit of the partnership. The expense of

legal services, including counsel fees, is a proper charge against the common fund so preserved or protected. *Weiss v. Bruno*, 83 Wn.2d 911, 523 P.2d 915 (1974); *In re Estate of Wheeler*, 71 Wn.2d 789, 797, 431 P.2d 608 (1967).

The judgment is reversed and remanded to the trial court to determine counsel fees.

HALE, C.J., and FINLEY, STAFFORD, WRIGHT, and BRACHTENBACH, JJ., concur.

ROSELLINI, J. (dissenting)—The majority in this case has overturned the finding of the trial court that it was the understanding and agreement of the parties to the limited partnership agreement that the general partner would buy land and would resell it to the partnership at a reasonable profit to itself. In doing so, it has not made so bold as to assert that there was no substantial evidence to support this finding. The trial court found that this agreement, while not expressed in the articles of limited partnership, was established by the evidence showing the course of dealing between the general partner and the limited partners over a period of years.

The court specifically found that, prior to purchasing their units of limited partnership, each of the appellants was advised and understood that the general partner had sold and would sell property to the partnership and in connection with such sales had made and would make a profit. It found that, prior to purchasing his units, each partner was informed and understood that contiguous properties could and would be purchased and that, in connection with said sales of property by the general partner to the partnership, the general partner would make a profit.

The court also found that in each transaction the markup in price was fair and reasonable and that the transactions were in all respects fair and reasonable to the limited partnership. According to the findings, the general partner exercised its particular skill and knowledge in the purchase of properties and was able to acquire properties at a price

lower than the fair market value of the property. Although the properties were transferred to Auburn West Associates for a price in excess of that paid by the general partner, the fair market value of the properties at the time of transfer with respect to each parcel was in excess of the price charged Auburn West Associates.

The most recent transaction upon which the appellants claimed a right to receive the benefit of the profit made by the general partner involved the acquisition of a tract of land known as the Murakami property. The trial court found that a number of events which occurred subsequent to the acquisition of this land by the general partner, and prior to its sale to the partnership, substantially increased its value. The court found that it was sold to the partnership for a sum which was $138,000 below its fair market value.

The court further found that Auburn West Associates has made and will make a substantial profit on the Murakami property and upon all of the property transferred to the partnership by the general partner. It found that the limited partners have received back nearly all of their initial $10,000 in capital from proceeds of sales and condemnation, all of the debts of the partnership have been paid and there remain approximately 50 acres of property worth approximately $25,000 per acre.

The majority does not pretend that any of these findings is unsupported by the evidence. Rather, it rests its reversal of the trial court upon an implied holding either (1) that partners are not bound under an agreement that the general or managing partner may make a fair and reasonable profit on a transaction with the partnership, unless the agreement spells out the method of determining the amount of such profit, or (2) that the terms of an agreement may not be established by the course of dealing between the parties.

No authority is cited for either proposition and I am convinced that if any such authority exists, it is contrary to the general principles of contract law, and to those which

this court has applied in determining the rights and obligations of parties who have entered into contracts of partnership.

This court is not without its precedents upon the law of partnership, and I find them to be in harmony with the general law. I also find that they support the judgment of the trial judge, who studied the exhibits and listened to the testimony of the witnesses, observed their demeanor, found the facts upon substantial evidence, and also observed where the equities lay. That court evidently came to the conclusion that this action was an attempt by a few of the limited partners to overreach and take unfair advantage of the general partner, without whose services the profitable investments made for the plaintiffs could never have been effected.

A partnership is an association of two or more persons to carry on as coowners a business for profit. RCW 25.04.060. RCW 25.04.180 sets forth rules governing the rights and duties of partners but makes such rules subject to any agreement between the parties. This is in harmony with the general rule that a partnership is a consensual relationship governed by the agreement between the parties, as far as that contract extends; that the courts cannot rewrite their agreement, but that those duties and obligations which are not reached by the express contract are implied and enforced by law. The rule is thus stated in 68 C.J.S. *Partnership* § 76 (1950). In *Eder v. Reddick,* 46 Wn.2d 41, 278 P.2d 361 (1955), we held that a contract of partnership, either express or implied, is essential to the partnership relationship.

A limited partner is not bound by the obligations of the partnership (RCW 25.08.010) and is not subject to the liability of a general partner, unless he takes part in the control of the business (RCW 25.08.070).

RCW 25.04.210 provides:

(1) Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from

any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property.

The statute embodies the general rule applicable to partners that a partner may not derive a *secret* personal profit out of the business or transactions of the firm. This rule is stated in 68 C.J.S. *Partnership* § 99 (1950). *See* Annot., *Duty of one who joins with others as partners or members of a joint adventure in the purchase of property from a third person to share with them the benefit of an existing option or executory contract for the property,* 152 A.L.R. 1001 (1944). Where a partner sells property to his partnership, he must make full disclosure of all the facts relating to the sale. *Victor Oil Co. v. Drum,* 184 Cal. 226, 193 P. 243 (1920); *Ligget v. Lester,* 237 Ore. 52, 390 P.2d 351 (1964). Full disclosure is necessary, otherwise it cannot be successfully maintained that the remaining partners have given their informed consent.

In the present case, the trial court found upon substantial evidence that it was the understanding and agreement of the partners that the general partner would acquire property and sell it to the partnership at a fair price and would itself realize a profit on the transaction. Such an agreement was within the power of the partners. There is no statute or rule of law of which I am aware which forbids it.

While the articles of limited partnership state that they contain the entire understanding of the parties, it is obvious that one of the terms which was essential to the partnership arrangement was not provided in the agreement. The articles contain no provision setting forth the price to be paid for any property other than that involved in the initial purchase, nor do they set forth any method of determining such price.

It is the rule that where a written agreement is silent as to one of the terms which is essential to the contract, that term may be supplied by parol evidence. In ascertaining the intention of parties to a written agreement, the court looks to the wording of the instrument itself as made by

the parties, views it as a whole, and considers all the circumstances surrounding the transaction, including the subject matter, together with the subsequent acts of the parties to the instrument. *In re Estate of Garrity,* 22 Wn.2d 391, 156 P.2d 217 (1945). In interpreting a partnership agreement, the agreement must be read as a whole and construed in the light of the history of the partnership and its purpose. *Ashley v. Lance,* 75 Wn.2d 471, 451 P.2d 916 (1969). *See also Yatsuyanagi v. Shimamura,* 59 Wash. 24, 109 P. 282 (1910).

A written contract may be modified by the subsequent conduct of the parties. *Davis v. Altose,* 35 Wn.2d 807, 215 P.2d 705 (1950). *And see Lundberg v. Corporation of Catholic Archbishop,* 55 Wn.2d 77, 346 P.2d 164 (1959) (an ambiguity may be resolved by subsequent conduct).

These were the rules of law followed by the trial court when it considered the nature of the partnership undertaking and the subsequent conduct of the parties to find their understanding as to the price or method of determining the price to be paid for properties purchased from the general partner.

The agreement which the trial court found to exist in this case it not an extraordinary one. It is generally the rule that, where there is an otherwise enforceable contract to purchase property and the price is not agreed upon, the court will determine the price upon the basis of the fair value of the property. *O'Keefe v. Aptos Land & Water Co.,* 134 Cal. App. 2d 772, 286 P.2d 417, 54 A.L.R. 2d 462 (1955); *Allred v. Linninger,* 156 Colo. 341, 398 P.2d 967 (1965); J. Pomeroy, *Specific Performance of Contracts* § 149 (3d ed. 1926); *and see* 5A A. Corbin, *Contracts* § 1174 (1964). The legislature has recognized this general principle and embodied it in the Uniform Commercial Code, RCW 62A.2-305, providing that if the parties to a sale have not agreed upon a price, the price shall be a reasonable price at the time for delivery.

In its implicit holding that an agreement to pay the fair

market value for the purchase of land is unenforceable, the majority has ignored and repudiated all of these authorities. The trial court found that there was such an agreement in the case before us, and the evidence supports that finding.

The majority acknowledges that the appellants assented to and acquiesced in the terms upon which all sales previous to the Murakami sale were made to the partnership, including the withholding of a reasonable profit on each transaction. What it apparently fails to perceive is that this course of conduct established the contract of the parties—whether it is viewed as having supplied a missing term or constituted a modification of the written contract. As I understand the law, the general partner was entitled to rely upon that contract when it made the Murakami sale; but the majority has said that it had no such right.

The opinion of the majority reflects a view, although it is not expressly stated therein, that an agreement established through a course of conduct of the parties may be repudiated at anytime by a party who does not find it to his liking. Not surprisingly, no authority is cited which would support such a proposition.

As the trial court found, the fact that the appellants acquiesced in all transactions prior to the Murakami sale, after receiving full disclosure of the facts indicates that they considered the price fair in each instance and that the transaction was conducted in accordance with the understanding of the parties. By this course of conduct, the parties manifested their agreement. That agreement governed the Murakami transaction as well as the previous transactions, according to established principles of contract law. In *Shell Oil Co. v. Wright,* 167 Wash. 197, 202, 9 P.2d 106 (1932), we said:

> There can be no question that an unexecuted contract, even though in writing, may be modified by agreement of both parties, and that, when so modified and acted upon by the parties, it will be given the same effect as if the modification was part of the original contract. *Tingley v.*

*Fairhaven Land Co.,* 9 Wash. 34, 36 Pac. 1098 [1894]; *La Plante v. Hubbard,* 125 Wash. 621, 217 Pac. 20 [1923]; *Hunters Cattle Co. v. Carstens Packing Co.,* 129 Wash. 377, 225 Pac. 68 [1924]; *Inman v. Roche Fruit Co.,* 162 Wash. 235, 298 Pac. 342 [1931].

It is not denied by the majority that the articles of partnership provided no method of compensating the general partner for its expertise and efforts in acquiring the properties for the partnership, and that unless the general partner could make a profit on the sale of properties to the partnership, its services would be bestowed gratuitously. It suggests no reason why the general partner would have been willing to give the partnership the benefit of these services without compensation.

It is true that the general partner was entitled to a share of the profits of the partnership as owner of 100 units of the partnership. However, those profits were attributable to its investment and not to its services, which the trial court found to have been of considerable value. It appears that the services of the general partner were necessary to achieve the partnership purposes.

In an analogous situation we have said that where one partner has the entire management and control and is devoting his whole time to the partnership business, and the other renders no service in the business and is entirely and constantly away from the business tending to other business of his own, such conditions may give rise to an implied contract that the one giving his whole time and attention to the business shall be compensated therefor. *In re Estate of Levy,* 125 Wash. 240, 215 P. 811 (1923). In *Waagen v. Gerde,* 36 Wn.2d 563, 576, 219 P.2d 595 (1950), we said that the exception to the general rule that one partner is not entitled to extra compensation from the partnership is well stated in 1 S. Rowley, *Modern Law of Partnership* § 354, at 412 (1916), as follows:

" 'Where it can be fairly and justly implied from the course of dealing between the partners, or from circumstances of equivalent force, that one partner is to be

compensated for his services, his claim will be sustained.' [*Emerson v. Durand*, 64 Wis. 111, 24 N.W. 129, 54 Am. Rep. 593.] 'The partnership may be of such a peculiar kind, and the arrangements and the course of dealing of the partners in regard to it may be such as pretty plainly to show an expectation and understanding, without an express agreement upon the subject, that certain services of a copartner should be paid for. Such cases, presenting unusual conditions, are exceptions to the general rule [*Hoag v. Alderman*, 184 Mass. 217, 68 N.E. 199],' however."

It would have been unreasonable for the limited partners to expect that the general partner would render its valuable services in acquiring the properties for the partnership without some form of remuneration, and the evidence showed that they had no such expectation. Under the system adopted, the amount of such remuneration depended entirely on the exercise of skill and judgment in the acquisition of properties. Had the market value of any parcel dropped before its resale to the partnership and had the general partner attempted to recoup its loss by selling to the partnership at the price which it had paid for the land, the limited partners would have had just cause for complaint. It appears that property values were rising rather rapidly in the area where the land was situated, and this was the reason why both the general partner and the partnership could realize substantial profits.

The trial court correctly applied the law to the undisputed facts of this case. They show that it was the understanding of the partners that the general partner would use its expertise and its facilities to acquire properties which the limited partners acting individually would have been unable to acquire and upon which they could realize a profit either from development, lease or resale; that it would sell those properties to the partnership at a fair price which would allow them to make such a profit and that this was the course of dealing throughout the life of the partnership. The conclusion that the partnership was bound to

pay the price charged by the general partner, which was below the fair market value, was compelled by the applicable law.

The judgment should be affirmed.

HUNTER and HAMILTON, JJ., concur with ROSELLINI, J.