**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

J&J CELCOM; LUPE AZEVEDO;
WOODROW W. HOLMES, JR.;
LUCILLE HOSS; DANIEL MURRAY;
RAJIVE OBEROI; KENNETH L.
RAMSEY; GARY R. ROBBINS; JOANNE
ROBBINS; S&D PARTNERSHIP; CELL-
CAL IX-T9; NANCY DONNELLY;
RODGER D. FRIZ; SID DANNY HOFF;
OM PARKASH KALRA; RONALD
WILSON; DELCHI CORPORATION,
                    *Plaintiffs-Appellants,*

v.

AT&T WIRELESS SERVICES, INC.;
McCAW CELLULAR INTERESTS INC.;
AT&T WIRELESS SERVICES OF
COLORADO LLC; AT&T WIRELESS
SERVICES OF IDAHO INC.; AT&T
WIRELESS SERVICES OF WASHINGTON
LLC; BOISE CITY CELLULAR
PARTNERSHIP, formerly known as
New Boise City Cellular
Partnership; FORT COLLINS-
LOVELAND CELLULAR TELEPHONE
CO., formerly known as New Fort
Collins-Loveland Cellular
Telephone Company; GREELEY
CELLULAR CO., formerly known as
New Greeley Cellular Company;
YAKIMA CELLULAR TELEPHONE

No. 05-35567

D.C. No.
CV-03-02629-MJP

ORDER

Company, formerly known as New Yakima Cellular Telephone Company; McCaw Communications of Wheeling, Inc.; McCaw Communications of Texarkana, Inc.; AT&T Wireless Services of California,
                    *Defendants-Appellees.*

Filed March 7, 2007

Before: Pamela Ann Rymer, Marsha S. Berzon, and Richard C. Tallman, Circuit Judges.

---

## COUNSEL

John Oitzinger, Helena, Montana, Thomas W. Hayton, Robert G. Nylander, Philip Edgerton Cutler Cutler Nylander & Hayton, Seattle, Washington, for the plaintiffs-appellants.

Brendan T. Mangan, Heller Ehrman LLP, Seattle, Washington, for the defendants-appellees.

---

## ORDER

In this diversity action, J&J Celcom and other former owners of fractional interests in nine general cellular telephone partnerships ("minority owners") appeal an adverse summary judgment of the United States District Court for the Western District of Washington in favor of AT&T Wireless Services and several of its wholly owned subsidiaries ("AWS"). The minority owners also appeal the district court's denial of their motion for partial summary judgment.

We have jurisdiction pursuant to 28 U.S.C. § 1291. In a Memorandum Disposition filed on December 26, 2006, we disposed of the minority owners' challenge to the district court's order excluding their late-filed expert witness report and grant of summary judgment on their claims for breach of contract, breach of implied duty of good faith and fair dealing, and breach of the fiduciary duty of care as to the service fees.

This order certifies to the Supreme Court of Washington the remaining dispositive question of state law, namely, whether the Revised Uniform Partnership Act allows a controlling partner to sell all of the partnership's assets to an affiliated party at a price determined by a third-party appraisal, where the partnership agreement authorizes sale of assets by majority or supermajority vote but is silent on the subject of sale to a related party.

I

Before turning to the issue to be certified, we provide the following summary of facts.[1] The minority owners acquired fractional interests in nine regional cellular telephone partnerships through a lottery for the cellular radio frequency spectrum conducted by the Federal Communications Commission. The agreements governing the nine partnerships at issue are substantially similar. The key asset in each was the right to own licenses for various frequencies and the customer base and call volume in each market served. At the time of the forced asset sales, the minority partners owned less than five percent of each partnership, and AWS owned the remainder. AWS provided wireless service to the partnerships' customers

---

[1] Certain facts remain disputed at the summary judgment phase. The Supreme Court of Washington may supplement this statement of facts with any additional information that it deems important from the certified record in order to resolve the certified question. The parties are obviously free to discuss the factual record in support of their legal positions when they brief the issue before the Supreme Court of Washington.

and all technical and administrative services related to the partnerships. The latter included detailed accounting of costs and revenues attributable to the minority partners. In 2001, AWS estimated that the administrative and accounting costs totaled about $150,000 annually for each of the partnerships with minority interests, and that the net present value of servicing all partnerships with minority interests amounted to $9.6 million.

AWS decided to eliminate those costs by invoking its majority interest in each partnership to buy out the minority owners. AWS retained Arthur Andersen ("AA") to prepare appraisals of four partnerships as of September 30, 2001. After AA disbanded, AWS retained Kroll, Inc. to prepare appraisals of the remaining five partnerships as of certain dates in 2002. Carlyn Taylor, AWS's valuation expert engaged for purposes of this lawsuit, reviewed the AA/Kroll reports. She found that they comported with professional appraisal standards and that the values were reasonable and represented the partnerships' fair value at the time of the asset sales. Charles Walters, the minority owners' valuation expert for the litigation, challenged the inputs and methodology of the AA/Kroll appraisals.

Initially, AWS offered to buy out the minority partners at a price slightly higher than the AA/Kroll appraised values. AWS sent letters to the minority partners offering a last opportunity to sell voluntarily. The letters stated that, if any minority owner declined the offer, the AWS subsidiary would vote to sell the assets of its partnership to an affiliated entity at the appraised value, dissolve the partnership, and pay the minority partners their pro rata share of the purchase price. Because some minority partners declined (including all but two of the minority owners who are plaintiffs-appellants here), AWS proceeded with the involuntary asset sales in July 2002 and February 2003. AWS rejected a suggestion that it retain independent counsel and an investment banking firm to negotiate better terms on behalf of the minority owners.

Before each asset sale, AWS established a new partnership to buy the assets of the old partnership. This new partnership was wholly owned by the AT&T Wireless Group. Partnership formalities were followed. When each old partnership received an offer for the purchase of its assets, it conducted a partnership meeting, and the relevant AWS subsidiary voted its entire interest in favor of the sale. As a result of the sales, the minority owners received about $3.5 million in total for their fractional interests. This amount represented a compound annual return ranging from 17.1% to 25.1% for the approximately fifteen years over which they held their interests.

In October 2004, Cingular Wireless LLC acquired AT&T's wireless business. According to estimates prepared by the minority owners' expert witness, as of that time, the nine partnerships were valued at approximately $750 million to $1 billion. Counsel admitted at argument that there is no evidence that this particular transaction was under consideration by AWS in 2002 and early 2003, when the buyouts were completed.

In the meantime, believing that the asset sales were improper, the minority owners filed suit in the district court against AWS alleging breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duties, and claims of misrepresentation, tortious interference, and unjust enrichment. After fifteen months of discovery, AWS moved for summary judgment. The minority owners cross-moved for partial summary judgment on liability. The district court granted AWS's motion and denied the minority owners' motion. As to the asset sales, the minority owners appealed claims of breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duties. On the issue of excessive service fees, the minority owners appealed their claims of breach of the fiduciary duty of care and of the implied covenant of good faith.

They also challenged the district court's exclusion of a late-filed expert witness report.

In a previously filed Memorandum Disposition, we affirmed the district court's grant of summary judgment in favor of AWS on the minority owners' claims for breach of contract, breach of implied duty of good faith and fair dealing, and breach of the fiduciary duty of care as to the service fees. We also affirmed the district court's order excluding the minority owners' late-filed expert witness report. We deferred decision on the minority owners' challenge to the district court's grant of summary judgment on the minority owners' claim of breach of the fiduciary duty of loyalty.

II

We first resolve the issue of whether the price paid by AWS represented the fair value of the partnerships at the time of the asset sales. As noted, the minority owners submitted an expert report offering a limited critique of the AA/Kroll appraisals. Because we agree with the district court that the report sets forth no coherent opinion of what the fair value was or why the price paid was not fair market value, we hold that this report was insufficient to create a triable issue as to whether the price paid was fair as of the time of the asset sales. Thus, we must assume that the price paid was fair at the time, as a matter of law.

This does not resolve the appeal, however, because if the sales nevertheless violated the duty of loyalty, *see infra*, the minority owners may be entitled to their share of a constructive trust on the partnership assets and any profits made thereupon. *See* Wash. Rev. Code § 25.05.165(2)(a); *Bassan v. Inv. Exch. Corp.*, 524 P.2d 233, 236-38 (Wash. 1974).

### III

We now turn to the issue that is the basis of our certification order:[2] the scope of a partner's fiduciary duty of loyalty in the context of a self-dealing transaction that was disclosed but not specifically authorized by the partnership agreement. No Washington court has had occasion to harmonize state case law concerning the fiduciary duty of loyalty with the Revised Uniform Partnership Act. *See* Wash. Rev. Code §§ 25.05.005-.907. Whether a trial on the minority owners' fiduciary duty of loyalty claim is necessary depends entirely upon the answer provided by the Supreme Court of Washington to our certified question. The answer to the certified question thus "is necessary . . . to dispose of" this appeal. Wash. Rev. Code § 2.60.020.

The two Washington cases of which we are aware that are relevant to a partner's fiduciary duty of loyalty in the context of a sale between partners, *Karle v. Seder*, 214 P.2d 684 (Wash. 1950), and *Bassan v. Investment Exchange Corp.*, 524 P.2d 233 (Wash. 1974), seem to point in different directions. *Karle* holds that full disclosure, fair price, and good faith suffice to satisfy a partner's fiduciary duty in the context of a consensual sale of partnership assets. 214 P.2d at 687-88. But *Bassan* holds that, where a partnership agreement is silent as to the specific transaction, a general partner may not sell property to a limited partnership and reap a profit, even where all partners expect that this kind of transaction will occur, the price is fair, and the amount of profit is reasonable. 524 P.2d at 236-38.

Critically, both cases predate Washington revisions to the

---

[2]Even though this course of action was not suggested by either party, we may properly certify a question sua sponte. *See* Wash. Rev. Code § 2.60.030(1) ("Certificate procedure may be invoked by a federal court upon its own motion."); *Keystone Land & Dev. Co. v. Xerox Corp.*, 353 F.3d 1093, 1095 n.2 (9th Cir. 2003).

Uniform Partnership Act, which appear to have made four important, relevant changes. First, the statute now states that the only fiduciary duties owed by a partner to the partnership or other partners are the duties of loyalty and care, as defined in the statute. Wash. Rev. Code § 25.05.165(1). Second, it expands the definition of the duty of loyalty to include "refrain[ing] from dealing with the partnership in the conduct or winding up of the partnership business as or on behalf of a party having an interest adverse to the partnership." *Id.* § 25.05.165(2)(b). Third, the statute clarifies that a partner does not violate a fiduciary duty merely because he furthers his own interest and that he may transact business with the partnership. *Id.* § 25.05.165(5), (6). Fourth, it permits the percentage of partners specified in the partnership agreement to authorize transactions that would otherwise violate the duty of loyalty. *Id.* § 25.05.015(2)(c)(ii).

In the instant case, we have construed the partnership agreements to allow for sale of all assets by either majority or supermajority vote.[3] None of them restricts the parties to whom assets may be sold. However, the partnership agreements do not specifically authorize sale of all assets to a related party as they do, for example, specifically authorize AWS to provide services to the partnership under certain conditions. If the Supreme Court of Washington holds that the asset sales would violate the duty of loyalty, and that the language in the partnership agreements is insufficient to contract around this duty under Wash. Rev. Code § 25.05.015(2) (c)(ii), then we must reverse the district court's grant of summary judgment on this issue. Otherwise, we will affirm.

---

[3]Three of the nine partnership agreements (Boise, Rochester, and Texarkana) expressly permit the sale of all or substantially all of the partnership's assets upon a 66.6% vote. The remaining six agreements provide for dissolution of the partnership upon the sale or assignment of substantially all of the partnership's assets, and state that every act other than certain listed acts not relevant here may be accomplished by majority vote.

Because this question of state partnership law is not settled in Washington, and because, if clarified definitively by the Supreme Court of Washington, the answer will have far-reaching effects on those who contract in Washington, or are subject to Washington law, we have concluded that the appropriate course of action is to certify this issue to the Supreme Court of Washington.

## ORDER

In light of our foregoing discussion, and because the answer to this question is "necessary . . . to dispose" of this appeal, Wash. Rev. Code § 2.60.020, we respectfully certify to the Supreme Court of Washington the following question:

> Does a controlling partner violate the duty of loyalty to the partnership or to dissenting minority partners where the controlling partner causes the partnership to sell all its assets to an affiliated party at a price determined by a third-party appraisal, when the appraisal and the parties to the transaction are disclosed and the partnership agreement allows for sale of assets upon majority or supermajority vote, but the partnership agreement is silent on the subject of sale to a related party?

We do not intend, by the phrasing of this question, to restrict the Supreme Court of Washington's consideration of this issue. We acknowledge that the Supreme Court of Washington may, in its discretion, reformulate the question. *Broad v. Mannesmann Anlagenbau AG,* 196 F.3d 1075, 1076 (9th Cir. 1999); *Lenhardt v. Ford Motor Co.*, 683 P.2d 1097, 1098 (Wash. 1984).

If the Supreme Court of Washington accepts review of the certified question, we designate appellants (the minority owners) to file the first brief pursuant to Wash. R. App. P. 16.16(e)(1).

The Clerk of Court is hereby ordered to transmit forthwith to the Supreme Court of Washington, under official seal of the United States Court of Appeals for the Ninth Circuit, a copy of this order and all briefs and excerpts of record pursuant to Wash. Rev. Code §§ 2.60.010(4), 2.60.030(2), and Wash. R. App. P. 16.16.

Further proceedings in this Court on the certified question are stayed pending the Supreme Court of Washington's decision whether it will accept review, and, if so, receipt of the answer to the certified question. The case is withdrawn from submission, in pertinent part, until further order from this Court. The panel will resume control and jurisdiction upon receipt of an answer to the certified question or upon the Supreme Court of Washington's decision to decline to answer the certified question. When the Supreme Court of Washington decides whether or not to accept the certified question, the parties shall file a joint report informing this Court of the decision. If the Supreme Court of Washington accepts the certified question, the parties shall file a joint status report informing this Court when the Supreme Court of Washington issues its answer.

It is so **ORDERED**.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2007 Thomson/West.